10-48255

**List of Documents & Evidence in Support of Debtors'
Objection to the Movants Motion for A Relief from Automatic
Stay**

**Doc. 1 Memo from Loan Originator, First United Loans.**

FILED

APR - 1 2011

BANKRUPTCY COURT
OAKLAND, CALIFORNIA

2  **Notice in Loan Documents of Sale & Transfer**

3.  **Letter From NovaStar as to Initial Loan Modification**

4.  **Letter from Saxon Mortgage Noticing Sale & Transfer**

5.  **Letter From Debtors to Novastar Mortgage**

6.  **Letter From NovaStar in Response to debtors' letter.**

7.  **Letter to Saxon Mortgage**

8.  **Notary Certificate on Letter to Saxon**

9.  **Letter to IRS**

10.  **Letter from CA Dept of Corporations re: Saxon**

11.  **Audit Notice From IRS**

12,  **Letter to State Of Californa about Saxon**

13.  **Letter to Saxon from Debtors**

14.  **Letter to US Treasury from Debtors/Taxpayers**

15.  **Letter to Saxon CEO, President, Vice President**

16.  **Explanation of Mortgage Interest Reductions/Home**

Acquisition Debt.

17. IRS PUBLICATION 936 Parts 1 &2

18 Letter from Department of Treasury in Response
to my requesting assistance in filing an amended
Return for Home Acquisition Debt correctly.

19. Letter to Department of Treasury
communication to IRS from debtors

# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

**To the HONORABLE RANDALL J. NEWSOME, UNITED STATES BANKRUPTCY COURT JUDGE, THE MOVANTS, THE MOVANT'S COUNSEL. THE TRUSTEE´ AND OTHER INTERESTED PARTIES**

**Re: Deutsche Bank National Trust Company's motion, versus Wendell Harper & Mary-Kathryn Harper. Debtors.**

**We formally object to the Motion by attorneys for Deutsche Bank based upon several violations.**

**1.The Motion is filed in violation of 11 U.S.C. 362, in that it is served directly on the debtors rather than our attorneys.**

*Code of Trial Conduct*
## "15. Communicating with One of Adverse Interest

During the course of representation of a client, a lawyer should not:
(a)      Communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in that matter, unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so. Opposing parties themselves may communicate directly with each other without the consent of their lawyers, and a lawyer may encourage the client to do so, although the lawyer may not use the client as a surrogate to engage in misconduct".

 **Second, the motion is filed before the debt Officially has been discharged.
The Chapter Seven Trustee John Kendall gave notice at the "meeting of creditors" to our attorney and we as debtors, that our Motion to Convert our case from a Chapter 13 to a Chapter 07 was continued, with no forwarding meeting or hearing scheduled. We have received neither official or unofficial Notification.**

**We were obligated by Bankruptcy statutes to reveal all claims, civil suits, inheritances or any estate equity that are pending. Our case is to be heard at an appeal hearing with the Internal Revenue Service within 60 days. We have included the notice from the IRS.**
     **We were directed to submit tax returns and supporting documents to the Trustee. We met that directive, and forwarded all requested forms, claims and supporting documentation to the office of the Trustee.**

2. The attorneys for Deutsche Bank knowingly filed a Motion for Relief from our Automatic Stay with the discharge still pending. We received the notice with fewer than 10 days to respond. Our attorneys, Price Law Group, informed us that they had not the time to respond before I contacted them. Time spent contacting us as Debtors violates the attorney-client relationship and damaged our ability to respond in a timely manner.

3. We need the real party in interest in the case to step forward. For nearly four years, we have tried communicating with the Loan Servicers, believing that they were the true owners, each, and urging the true owner to reveal their identify. We wrote Saxon mortgage(letter included), asking them to help us accomplish a loan "Payoff". In other words, we were willing to pay the full loan amount, even though its at least three times the amount of the original loan, and much more than we contracted to pay. Saxon flatly refused, and would not reveal itself as the owner nor would they tell us the name of the individual or corporation. We asked the same of NovaStar, and Deutsche Bank. NovaStar's letter to us on two occasions reveals that they have no connection with this or any loan, by their own admission and without prejudice on our part. As to the issue of true ownership, your Bankruptcy system entered this decision about "MERS"m

foreclosure litigation loan modification predatory lending tila respa class action lost promissory notes injunctionswww.prodefenders.com



# California Court Rules: MERS Can't Foreclose, Citibank Can't Collect

Southern California (909)890-9192 begin_of_the_skype_highlighting          (909)890-9192    end_of_the_skype_highlighting  in Northern California(925)957-9797



"Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is VOID under California Law."

If you read that sentence and thought… "MERS," then you're already in the club. If you've never heard of MERS, and have no idea what is meant by being "in the club," don't worry, this is a club that just about every homeowner is invited to join. In fact, you may already be a member and not even know it.
MERS is the acronym used to describe Mortgage Electronic Registration Systems, Inc. Best I can tell, our friends in the mortgage banking industry created MERS to make it easier for banks and servicers to sell and transfer our mortgages at the speed of light during the real estate bubble. According to the company's Website:
MERS was created by the mortgage banking industry to streamline the mortgage process by using electronic commerce to eliminate paper. Our mission is to register every mortgage loan in the United States on the MERS®System.
MERS acts as nominee in the county land records for the lender and servicer. Any loan registered on the MERS®System is inoculated against future assignments because MERS remains the nominal mortgagee no matter how many times servicing is traded.

I have to tell you… I hate these guys already. Their attitude alone bothers me. I looked at pictures of their three top executives on their Website and thought to myself… "No way I'd be friends with these guys." Probably not very fair of me, but as far as I'm concerned, when it comes to anything that talks like that and was created by the mortgage banking industry… "fair," is where you go on Sunday to have popcorn and cotton candy. Just so we're clear.
MERS, which is a company that I hear doesn't even have employees, has been about as controversial as you get ever since houses started dropping like flies into foreclosure back in 2007-08. God forbid you find yourself losing your home to foreclosure, you'll very likely find a representative from MERS looking smug and acting like the owner of your mortgage. But, MERS is not the owner of your mortgage, of course, and now a bankruptcy court judge in the Eastern District of California has officially said that he agrees.

MERS is a relatively new development in the mortgage world, and as the foreclosure crisis began the courts pretty much let them do whatever they wanted to do, as the party in interest in a foreclosure action. But, that was before the foreclosures became a full fledged tsunami, and homeowners watched the bankers first get bailed out, and then pay out billions in bonuses before treating every single American homeowner/taxpayer who applied for a loan modification like insignificant garbage.

In response, homeowners, having been trained for over 200 years in the fine art of pushing back when shoved, went to their lawyers, and those lawyers started asking questions, as they are prone to do. Many started with questions like: "Who the heck is this MERS guy and why does he think he has any right to be foreclosing on my client's home?"

For almost two full years, it seemed to me that judges, who frankly weren't used to foreclosures being challenged, basically yawned and gave the house back to the bank. Then, starting about a year ago, give or take, things started to change. Judges started to listen to the points being raised as related to MERS showing up as the party in interest ready to foreclose, and the more the judges learned, the more they saw problems with what MERS was doing. As time went on the tide seemed to shift a bit and several decisions weren't falling as MERS would have liked for one reason or another.

According to the company's Website, MERS "is a proper party that can lawfully foreclose as the mortgagee and note-holder of a mortgage loan." Here's what it says on the MERS Website:
FORECLOSURES
("MERS") is In mortgage foreclosure cases, the plaintiff has standing as the holder of the note and the mortgage. When MERS forecloses, MERS is the mortgagee and it is the holder of the note because a MERS officer will be in possession of the original note endorsed in blank, which makes MERS a holder of the bearer paper.

But, in this latest decision, the bankruptcy judge in California didn't agree, writing in his opinion:
"Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank. Since MERS did not own the underlying note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is void under California law."

Did you get that? Since MERS didn't own the underlying note, it couldn't transfer the beneficial interest of the Deed of Trust to Citibank.

According to several attorneys, this opinion should serve as legal basis to challenge a foreclosure in California that has been based on a MERS assignment. It could also be used when seeking to void any MERS assignment of the Deed of Trust, or the note, to a third party for purposes of foreclosure; and should be sufficient for a borrower to obtain a TRO against a Trustee's Sale, and a Preliminary Injunction preventing any sale, pending litigation filed by the borrower that challenges a foreclosure based on a MERS assignment.

In this decision the court found that MERS was acting "only as a nominee," under the Deed of Trust, and that there was no evidence of the note being transferred. The judge's opinion in this case also said that "several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose on the property secured by the deed", citing cases of: In Re Vargas, California Bankruptcy Court; Landmark v. Kesler, Kansas decision as to lack of authority of MERS; LaSalle Bank v. Lamy, a New York case; and In Re Foreclosure Cases, the "Boyko" decision from Ohio Federal Court.

And the court concluded by stating:
"Since the claimant, Citibank, has not established that it is the owner of the promissory note secured by the trust deed, Citibank is unable to assert a claim for payment in this case."

Oh my… well, that really is something. MERS can't foreclose and Citibank can't collect? I believe you would have to say that MERS and Citibank were already in a hard place when the judge inserted a rock. MERS can't foreclose and Citi can't collect… I am absolutely loving this, I have to say, but I suppose giddy would be an inappropriate response, so I'll just say, "how interesting".

This decision means that if a foreclosing party in California, that is not the original lender, claims that

payment is due under the note, and that they have the right to foreclose on the basis of a MERS assignment, they're wrong… based on this opinion. The bottom line is that MERS has no authority to transfer the note because it never owned it, and that's a view that even seems to be supported by MERS' own contract, which says that "MERS agrees not to assert any rights to mortgage loans or properties mortgaged thereby". What this may mean to California's homeowners in bankruptcy court…

· It should serve as a legal basis to challenge any foreclosure in California based on a MERS assignment.
· It should serve as the legal basis for voiding a MERS assignment of the Deed of Trust, or the note, to a third party for purposes of foreclosure.
· It should be an adequate basis for obtaining a TRO against a Trustee's Sale
· It should be the basis for a Preliminary Injunction barring any sale pending litigation filed by the borrower that challenges a foreclosure based on a MERS assignment.

In addition, some lawyers believe that this ruling is relevant to borrowers across the country as well, because the court cited non-bankruptcy cases related to the lack of authority of MERS, and because this opinion is consistent with prior rulings in Idaho and Nevada Bankruptcy courts on the same issue.

I don't know about you, but I feel like watching a marching band. 76 trombones, baby, 76 trombones.

"Any attempt to transfer the beneficial interest of a trust deed without ownership of the underlying note is VOID under California Law."


The Proof of Claim at issue, listed as claim number 5 on the court's official claims registry, asserts a $1,320,650.52 secured claim. The Debtor objects to the Claim on the basis that the claimant, Citibank, N.A., did not provided any evidence that Citibank has the authority to bring the claim, as required by Federal Rule of Bankruptcy Procedure 3001(c), rendering the claim facially defective.

The court's review of the claim shows that the Deed of Trust purports to have been assigned to Citibank, N.A. by Mortgage Electronic Registration Systems, Inc. as nominee for Bayrock Mortgage Corporation on March 5, 2010. (Proof of Claim No. 5 p.36-37, Mar. 19, 2010.) Debtor contends that this does not establish that Citibank is the owner of the underling promissory note since the assignor, Mortgage Electronic Registration Systems, Inc. ("MERS"), had no interest in the note to transfer. Debtors loan was originated by Bayrock Mortgage Corporation and no evidence of the current owner of the promissory note is attached to the proof of claim. It is well established law in the Ninth Circuit that the assignment of a trust deed does not assign the underlying promissory note and right to be paid, and that the security interest is incident of the debt. 4 WITKIN SUMMARY OF CALIFORNIA LAW, SECURED TRANSACTIONS IN REAL
PROPERTY §105 (10th ed).

MERS AND CITIBANK ARE NOT THE REAL PARTIES IN INTEREST
Under California law, to perfect the transfer of mortgage paper as collateral the owner should physically deliver the note to the transferee. Bear v. Golden Plan of California, Inc., 829 F.2d 705, 709 (9th Cir. 1986). Without physical transfer, the sale of the note could be invalid as a fraudulent conveyance, Cal. Civ. Code §3440, or as unperfected, Cal. Com. Code §§9313-9314. See ROGER BERNHARDT, CALIFORNIA MORTGAGES AND DEEDS OF TRUSTS, AND FORECLOSURE LITIGATION §1.26 (4th
ed. 2009). The note here specifically identified the party to whom it was payable, Bayrock Mortgage Corporation, and the note therefore cannot be transferred unless the note is endorsed. See Cal. Com. Code §§3109, 3201, 3203, 3204. The attachments to the claim do not establish that Bayrock Mortgage Corporation endorsed and sold the note to any other party.

TRANSFER OF AN INTEREST IN THE DEED OF TRUST ALONE IS VOID
MERS acted only as a "nominee" for Bayrock Mortgage under the Deed of Trust. Since no evidence has been offered that the promissory note has been

transferred, MERS could only transfer what ever interest it had in the Deed of Trust. However, the promissory note and the Deed of Trust are inseparable. "The note and the mortgage are inseparable; the former as essential, the later as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Carpenter v. Longan, 83 U.S. 271, 274 (1872); accord Henley v. Hotaling, 41 Cal. 22, 28 (1871); Seidell v. Tuxedo Land Co., 216 Cal. 165, 170 (1932); Cal. Civ. Code §2936. Therefore, if on party receives the note an another receives the deed of trust, the holder of the note prevails regardless of the order in which the interests were transferred. Adler v. Sargent, 109 Cal. 42, 49-50 (1895).

Further, several courts have acknowledged that MERS is not the owner of the underlying note and therefore could not transfer the note, the beneficial interest in the deed of trust, or foreclose upon the property secured by the deed. See In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007); In re Vargas, 396 B.R. 511, 520 (Bankr. C.D. Cal. 2008); Landmark Nat'l Bank v. Kesler, 216 P.3d 158 (Kan. 2009); LaSalle Bank v. Lamy, 824 N.Y.S.2d 769 (N.Y. Sup. Ct. 2006). Since no evidence of MERS' ownership of the underlying note has been offered, and other courts have concluded that MERS does not own the underlying notes, this court is convinced that MERS had no interest it could transfer to Citibank.

Since MERS did not own the underling note, it could not transfer the beneficial interest of the Deed of Trust to another. Any attempt to transfer the beneficial interest of a trust deed with out ownership of the underlying note is void under California law. Therefore Citibank has not established that it is entitled to assert a claim in this case.

MULTIPLE CLAIMS TO THE BENEFICIAL INTEREST IN THE DEED OF TRUST AND OWNERSHIP

OF PROMISSORY NOTE SECURED THEREBY

Debtor also points out that four separate entities have claimed beneficial ownership of the deed of trust. (Obj. to Claim 3-5, Apr. 6, 2010.) The true owner of the underling promissory note needs to step forward to settle the cloud that has been created surrounding the relevant parties rights and interests under the trust deed.

DECISION

11 U.S.C. §502(a) provides that a claim supported by a Proof of Claim is allowed unless a party in interest objects. Once an objection has been filed, the court may determine the amount of the claim after a noticed hearing. 11 U.S.C. §502(b). Since the claimant, Citibank, has not established that it is the owner of the promissory note secured by the trust deed, Citibank is unable to assert a claim for payment in this case. The objection is sustained and Claim Number 5 on the court's official register is disallowed in its entirety, with leave for the owner of the promissory note to file a claim in this case by June 18, 2010.
]

# GRAYSON REQUESTS HALT TO FORECLOSURES

## Congressman on Document Fraud: "This is lawlessness."

(ORLANDO, Fla.) – Congressman Alan Grayson (FL-8) has requested that the Florida

Supreme Court halt all foreclosures involving three firms under investigation for

document fraud. In a letter to Chief Justice Charles Canady, dated September 20, 2010,

Congressman Grayson highlights the issue of illegal foreclosures.

In the letter, Congressman Grayson wrote, "Taking someone's home should not be

done lightly. And it should certainly be done in accordance with the law."

Three foreclosure mills – the Law Offices of Marshall C. Watson, Shapiro & Freeman,

and the Law Offices of David J. Stern – constitute roughly 80% of all foreclosure

proceedings in Florida. All three are under investigation by the Attorney General of

Florida. "I respectfully request that you abate all foreclosures involving these firms

until the Attorney General … has finished his investigation of those firms,"

Congressman Grayson requested of Chief Justice Canady.

The Congressman's letter highlights a foreclosure case in Jacksonville, which a judge

dismissed with prejudice.  In the ruling, the judge excoriated Chase, WAMU, and

Shapiro and Fishman for document fraud on the court.  In the case, Chase attempted to

foreclose on a home, when it did not actually hold the mortgage note.

A recent New York Times story exposes the foreclosure mills in Florida, and the highspeed foreclosure

process underway in some parts of the state.  Several news reports

discuss rampant and widespread practices of document fraud and forgery.  Members of

the Congressman's staff spoke with multiple foreclosure specialists and attorneys in

Florida who confirm the reports. "If the reports I am hearing are true, the illegal

foreclosures taking place represent the largest seizure of private property ever

attempted by banks and government entities.  This is lawlessness," said Congressman Grayson.

**grayson.house.gov**

As required by the Internal Revenue Code, both the Homeowner and the Mortgage Lender, in a mortgage contract, must report all financial transactions to the IRS for consideration as to their tax status. The homeowner is required by law to report all mortgage interest paid to the lender over a 12 month tax period. The reports are sent to the Homeowner Plaintiffs by the Lender on a form 1098

The Lender, in return, is required to report to the IRS, all fully deductible mortgage interest paid by a homeowner, that is not reported to the IRS by the Homeowner/Borrower. The information is contained in a 1098 specifically related to Mortgage Interest & points. The form calls for the Tax Payer Identification numbers of Both the Lender & the Borrower.

Under the Internal Revenue Code & according to Publication 926, the Lender is required to report any such amount to the IRS that is over 600 dollars. As the implied owner of Loan Servicing Rights connected to the Mortgage of Plaintiffs' Wendell & Mary-Kathryn Harper, Saxon Mortgage was obligated to report this information on the Tax form 1040 Schedule A.

Evidence reveals that Saxon Mortgage did not and has not reported Loan amounts, Mortgage interest or points paid on three separate loans. In fact, Saxon mortgage followed Country Wide Loans & Banc/Plus Mortgage/Homeside Lending, in failing to report either timely or in writing, the amounts of Mortgage interest & Points paid to the Lender by the Borrower, upon transaction of the Loans

Saxon Mortgage, NovaStar Mortgage, & Deustche Bank all failed to report the loan Amounts, accrued in 2004, 2005 and 2006. It also failed to act in accordance with instructions on lines 11 & 12 of Tax form 1040 Schedule A. All three claims were processed by the IRS and Saxon's failure has cost Plaintiffs Wendell & Mary-Kathryn Harper, the entitlement to full recovery of their mortgage interest paid to the lender for the purpose of home improvement.

Plaintiff provided clear evidence & documentation to the IRS that it was entitled to the provisions of the Tax Code instructions on payment of all refund amounts permitted by the Internal Revenue Code & the IRS Publication 936, Part 11: Fully deductible mortgage interest based on "Home Acquisition Indebtedness. all the refund amounts called for by the Tax Code &IRS Publication 936: Fully Deductible" mortgage interest based on Home Acquisition Indebtedness.

Saxon Mortgage, Deustche Bank & NovaStar Mortgage, by Willfully denying the Plaintiffs Information they so urgently needed and to which they are entitled, in effect damaged irreparably, their ability to negotiate for the acquisition of a full mortgage refund & ownership of their home.

The Plaintiffs Wendell Harper & Mary-Kathryn Harper, as required reported plans to file this Civil Action with The Chapter 07 Bankruptcy Trustee. Plaintiffs

also were directed to hand over documents relative to six amended tax returns, four of which are claims for additional refund payments due them. The confirmation of Plaintiffs Chapter 07 plan has been continued pending the examination of the Tax documents & Income Tax Returns.

The Chapter 07 Hearing can help us establish the "True Owner" of this mortgage note. The owners have a fiduciary responsibility in the matter of our tax claims, to verify and validate our claims for "Home Acquisition Debt" refunds.  With their endorsement, as required by the Tax code,
We would have gotten "Fully Deductible Mortgage Interest", after filing amended returns for mortgage, interest, points and prepayment penalties for three Refinancing Loans totaling $832,000. IRS Publication 936 and the Internal Revenue Code, with corresponding language, directs lenders to report all mortgage interest, points, prepayment penalties and balloon payments over $600.00.

Therefore, we hold the movants in this case, liable for damages caused in the true owner's refusal to acknowledge the contract agreement we signed in making the refinancing loans.  In other words, had they complied, we would have received refunds sufficient to pay the mortgage in full.

The amended returns for 2004, 2005, 2006 & one for 2002 are not the subject of validity. All four claims were processed, and overpayments made to my spouse and ^ that both eliminated our years of tax debt and provided us with several refund checks. The refunds would have been made, we insist, based upon acquired debt, and not "Adjusted Gross Income".

Still at issue, then, is the fact that we have not been given the full refund value of our claims. The IRS explained what we must do to get claim fully deductible mortgage Interest up to one million dollars in all four claims. In its Notice of Deficiency audit in 2009,  the IRS attributed most of our tax debt to unsubstantiated claims for mortgage interest:

The IRS FRESNO CENTER wrote:

"YOUR MORTGAGE INTEREST DEDUCTION NEEDS VERIFICATION
The mortgage interest deduction and points claimed on your return were more than the amounts your lender(s) reported to us on form 1098, Mortgage Interest Statement. Please provide copies of the documents used to support the amounts claimed on form 1040"
Schedule A, Line 10
Schedule B, Line 16a
Schedule E, Line 12

Schedule F, Line 23a and/or
Form 4805., Line 19a

To the best of our knowledge and belief, we have met the obligation, and filed a corrected set of returns for 2005 & 2006. This is to codify the issue of line items 11 & 12 On Schedule A of our amended return. All three Lenders in this matter have been contacted on numerous occasions. Many of our letters and memorandums to them are included in this objection packet. The letters will show that only NovaStar Mortgage answered our communications, in October 2007 to tell us that they were transferring the Servicing rights of the loan to Saxon Mortgage, Inc.

We got a second letter from NovaStar Mortgage in March, 2009, informing us that they were out of the loan servicing business. We got no response from Deutsche Bank. We informed them in 2009 that we would be filing an amended return for a refund if a foreclosure sale was conducted. We now serve notice that we have begun drafting an amended return for the current loan amount, which the Tax Code & the IRS allow.
 If the foreclosure is completed, we will file an official amended return for a mortgage interest refund by computing an average balance based upon Deutsche Bank's charge that it is owed $537,000.

We contacted the three lenders to get the verification from the "True Owner" as required by the Tax Code. We did so based upon this directive from the IRS:

"ACCURACY PENALTY FOR SUBSTANTIAL TAX UNDERSTATEMENT.
- IRC SECTION 66621(d)
- If we increase your tax, and he increase exceeds 10%,of the corrected tax and is also equal to or greater than $5.000, the law requires an accuracy-related penalty due to substantial understatement of tax. The penalty is 20% of your tax increase. The penalty may be reduced or not charged if you:

- Provide the substantial authority (such as, Internal Revenue Code,
- Regulations, Revenue Rulings, Revenue Procedures, etc.) you used to
- Decide how to treat your income or deduction, or,
- Tell us where on your return you clearly show the facts supporting your
- Treatment of the income or deduction, or
- Submit a signed statement that clearly outlines the facts supporting your
- Treatment of the understate income. "

We have complied with the IRS. The request for an appeal hearing was filed on January 28, 2011 by our attorneys from "Tax Relief Specialists", three days after the meeting of creditors regarding the Chapter 07 case. As I have noted and shown, The IRS requires, along with the Tax Code, that the Lender verify Lines 12 & 13 on the Tax form Schedule A. We have been contacting all these servicers to get their verification, but the true owner or fiduciary responsible has remained anonymous.

We are going to argue our case when the appeal hearing is set. We have included the Notice from the agency, and the documents from the IRS detailing how we may clear our debt. The lender has abdicated its responsibility by not revealing its identity, and by not reporting the Mortgage Interest, Points & Prepayment Penalties we have paid during the processing and payout of five separate refinancing loans.

Again, we demand that the true owner of this mortgage loan, stand up!

4. Our case with the IRS is a pending action: We still have an active return with the IRS for the 2006 tax year, and we dispute their findings as to the amount of refunds we received. The true lender is liable for damages, as they have refused to verify the loans we transacted or to give their signatures, a certified copy of the Loan documents and Taxpayer Identification Numbers.

We are filing an amended return right after the 2010 tax deadline, for $537,000. This amount is more substantially than the $475,000 loan figure listed on The "Notice Of Default & Election to Sell" we received in March, 2010. After the Bankruptcy was filed for Chapter 13, the lender objected to the plan and presented the above figure. They have provided no documentation to support this increase; no Signed agreement, no notice of an increase to us and borrowers, nor a loan.



Our amended return will be submitted by our attorneys at the hearing, to be argued when and where appropriate. The Lenders have an obligation to be on hand and verify my documentation and thee amounts we have requested. The refunds approved by the IRS were accomplished without verification from the lenders, but because they did not comply, we received 75 percent refund less than we would have Received with their support.

5. Fraudlulent, deceptive actions by the lender(s). These lenders are asking this court to provide them Relief From the Automatic Stay. We say there would be no need for such relief had any one of the lenders reported our payment of Mortgage Interest, Points & Prepayment Riders. Although the IRS Claims our amounts were overstated, it is because the lenders did not respond or comply with their tax obligation. Further, Saxon Mortgage, apparently with the knowledge and complicity of Deutsche Bank representatives, forged a Loan Modification agreement to us, in which they demanded nearly $5000, after breaking the same Loan Modification Agreement we drew up with NovaStar before they sold their loan servicing rights.

The loan modification agreement must be produced by Saxon Mortgage, I sent my only copy to the State of California, Department of Corporations. The amount we paid was in addition to the $7000 in advance we paid NovaStar Mortgage for the Only agreement recorded with the Contra Costa County Tax Assessor/Collector's office.

The Fraudulent Loan Modification Agreement forged by Saxon Mortgage bears it's name, and is the basis for the amount we reported as the monthly payment of $1935.00. This was the version sent to the State of California, Department of Corporations by Saxon Mortgage, who falsely asserted that this May, 01, 2009 "Loan Modification Agreement" was the certifiable document. It was not, as the document was never entered into the record by Saxon, although they required the Deposit fee, which was illegal, and required us to produce notarized signatures and sworn statements that they never signed, but took the money.

This document shows that we were forged into believing that we had reached an agreement, when Saxon Mortgage clearly had no intention of recording the document, and every intention of taking payments that would not be applied to the loan. We say that Saxon should be required to produce a certified copy of that document. We demand also that Saxon Mortgage, Inc., & Deutsche Bank acknowledge this fake agreement and refund the money they never applied to the mortgage.

Yet, Deutsche Bank is in this court, insisting that is  losing money. We are the only ones losing. We have incurred a Tax debt that should be converted to refund. The debt is solely caused by the lenders. We further insist that NovaStar Mortgage

acknowledge that it declined to verify our loan points and interest, and stated in writing that it not only isn't servicing this loan, but is out of business altogether.

**Why are we confident of our ability to claim a refund with the IRS. This question is Answered in the IRS Manual at www.irs.gov.**

### Question:

If the remaining balance owed on my mortgage loan that I was personally liable for was canceled after my foreclosure, may I still exclude the canceled debt from income under the qualified principal residence exclusion, even though I no longer own my residence?
Yes, as long as the canceled debt was qualified principal residence indebtedness. See Example 2 on page 13 of Publication 4681, Canceled Debts, Foreclosures, Repossessions, and Abandonments.

### Question

s 2007 through 2012.

Is there a limit on the amount of forgiven qualified principal residence indebtedness that can be excluded from income?
The maximum amount you can treat as qualified principal residence indebtedness is $2 million ($1 million if married filing separately for the tax year), at the time the loan was forgiven. If the balance was greater, see the instructions to Form 982 and the detailed example in Publication 4681.

**I have also, a memorandum copy from the IRS Chief Counsel, and the Tax Code.**

# IRS Breaks With Tax Court on Deduction Limits

**"The deduction of home mortgage interest is one of the most valuable and hotly debated benefits provided**

**in the tax code to individuals. Since 1987, the code has restricted the interest deduction based on the amount of home mortgage debt the taxpayer has incurred, and the reasons for the debt. In a recent ruling, however, the Internal Revenue Service announced it would not follow a court ruling that limited the amount of deductible home mortgage interest — noteworthy because this time the IRS ruled in the taxpayer's favor.**

**In general, a taxpayer may deduct a certain amount of interest paid on a loan secured by his or her main home, or a second home, whether the loan is a first or second mortgage, a home equity loan, or line of credit.**

**To claim the deduction, the taxpayer must file a Form 1040 and itemize deductions, the loan must be a bona fide legal obligation of the taxpayer, and the debt must be a secured by a home in which thetaxpayer has an ownership interest. For mortgages taken out after Oct. 13, 1987, the amount of interestthat is deductible depends on the amount of the mortgage and how the taxpayer uses the loan proceeds.**

Under IRC §163(h)(3), individuals may deduct interest on "acquisition indebtedness" and "home equity indebtedness" if the indebtedness is secured by the taxpayer's principal residence and/or one other residence used by the taxpayer. "Acquisition indebtedness" is any debt that the taxpayer uses to acquire, construct, or substantially improve a personal residence; however, acquisition indebtedness is capped at $1 million. Thus, interest paid on any debt in excess of $1 million is not deductible, even if the loan proceeds are used to acquire, construct, or substantially improve a personal or secondary residence.

However, the code also allows a taxpayer to deduct interest paid on up to $100,000 of "home equity indebtedness" — defined as any interest paid on "indebtedness (other than acquisition indebtedness)" that is secured by the taxpayer's residence, so long as there is sufficient equity in the property (i.e., the fair market value of the residence must exceed the amount of the acquisition debt on the property by at least the amount of the home equity indebtedness, measured as of the time of the borrowing).

In light of the statutory definition of "home equity indebtedness" as "any indebtedness (other acquisition indebtedness)" the tax court has not allowed a taxpayer to deduct interest on a home equity loan if the home equity loan proceeds were used to acquire, construct or improve a personal residence. If a home equity loan is used for any other purpose — whether it be for your son's tuition, a vacation to Bali

or to pay down consumer credit cards — interest on such a loan up to $100,000 is deductible (so long as

the loan is secured by the equity in the home). But a taxpayer has not been able to treat an additional $100,000 of debt as "home equity indebtedness" if the proceeds were used for home acquisition purposes, even if there was sufficient equity in the home. Pau v Commissioner , T.C. Memo 1997-43, and Catalano v Commissioner , T.C. Memo 2000-82. The tax court ruled that if a taxpayer uses all of the mortgage debt to acquire a personal residence, it was characterized as acquisition indebtedness, and under the statute, interest paid on acquisition indebtedness in excess of $1 million is not deductible. IRC §163(h)(3)(C)

The Recorder: IRS Breaks With Tax Court on Deduction Limits
http://www.law.com/jsp/ca/PubArticleFriendlyCA.jsp?id=1202476543982

1 of 3 1/25/2011 11:18 AM$100,000 of debt as "home equity indebtedness" if the proceeds were used for home acquisition purposes, even if there was sufficient equity in the home. Pau v Commissioner , T.C. Memo 1997-43, and Catalano v Commissioner , T.C. Memo 2000-82. The tax court ruled that if a taxpayer uses all of the mortgage debt to acquire a personal residence, it was

characterized as acquisition indebtedness, and under the statute, interest paid on acquisition indebtedness in excess of $1 million is not deductible. IRC §163(h)(3)(C).

Earlier this year, however, the IRS issued a ruling allowing taxpayers to treat an additional $100,000 of mortgage debt that is used to acquire, construct or substantially improve a qualified residence as "home equity indebtedness" under IRC §163(h)(3)(C). As a result, taxpayers may now deduct interest on up to $1.1 million of debt that is used to acquire, construct or improve a personal residence.

The ruling announced that the IRS would no longer follow the Tax Court's holding disallowing deduction of interest on home equity loans if used to acquire, construct or substantially improve one's personal residence.

In the ruling, the taxpayer purchased a principal residence for $1,500,000, paying $300,000 down and financing the remaining $1,200,000 through a loan secured by the residence. The taxpayer paid interest accruing on that indebtedness, but had no other debt secured by the residence.

excess of $1 million is not deductible. IRC §163(h)(3)(C).

Earlier this year, however, the IRS issued a ruling allowing taxpayers to treat an additional $100,000 of mortgage debt that is used to acquire, construct or substantially improve a qualified residence as "homeequity indebtedness" under IRC §163(h)(3)(C). As a result, taxpayers may now deduct interest on up to$1.1 million of debt that is used to acquire, construct or improve a personal residence. The ruling announced that the IRS would no longer follow the Tax Court's holding disallowing deduction of interest on home equity loans if used to acquire, construct or substantially improve one's personal residence.

In the ruling, the taxpayer purchased a principal residence for $1,500,000, paying $300,000 down and financing the remaining $1,200,000 through a loan secured by the residence. The taxpayer paid interest accruing on that indebtedness, but had no other debt secured by the residence. The IRS ruled that the taxpayer could deduct interest on $1,000,000 of the indebtedness under §163(h)(3)(B) because it was "acquisition indebtedness" used to acquire the residence. The IRS went on to hold that the taxpayer may also deduct, as interest on "home equity indebtedness" under §163(h)(3)(C), interest paid on an additional $100,000 of the remaining indebtedness of $200,000. Accordingly, the taxpayer was allowed to deduct interest on an additional $100,000 of the debt as "home equity indebtedness" even though it was used to acquire, construct, or substantially improve the home.

In short, under this ruling, a taxpayer may now deduct interest on up to $1.1 million of debt that is used to acquire, construct, or substantially improve a primary or second home, so long as there is at least $100,000 of home equity securing the loan. The IRS expressly rejected the court's holding that a taxpayer must demonstrate that debt treated as home equity indebtedness was not used for acquisition purposes

because the definition of "home equity indebtedness" in §163(h)(3)(C) contains no such restriction.

This is, of course, a welcome clarification for taxpayers. The common understanding of "home equity indebtedness" is that the taxpayer can use the proceeds of the loan for any purpose, without restriction.

The IRS Publication on Home Mortgage Interest
(Publication 936, p 9) confirms that home equity indebtedness can include debt used to acquire a home if it exceeds the $1 million acquisition indebtedness limit. Whereas the code defines acquisition indebtedness as funds that are used for a specific purpose (to acquire, construct or substantially improve a home), there is no restriction on the definition of home equity debt. The IRS ruling logically clarifies this to include the additional $100,000 of home equity debt. Moreover, although the precedential value of a revenue ruling generally does not 'trump' an opinion of the Tax Court (which has nationwide jurisdiction), when the IRS position is more favorable to the taxpayer than the court's, the issue is unlikely to be raised at the audit level. Consequently, the IRS has signaled to taxpayers that they will not be challenged on audit if they deduct interest on up to $1.1 million of indebtedness that is used to acquire, construct, or improve their primary residence and/or one additional residence if there is at least $100,000 of equity in the home or homes that secure the mortgage.

I now have Certified Loan Documents that I received only after the State of California ordered Saxon to respond to my complaint and interrogatories. This is also how I discovered that the fraudulent Loan Modification Agreement was being passed off as the Genuine Deed of Trust.

In every instance in which the Debtor sought vigorously to contact the Lenders, to find the true lender and to accomplish a mortgage payoff, we were obstructed, ignored, our mortgage and principal increased, and communication muted.

The "True Lender has placed themselves into this position; not of having suffered a loss, but of using fraudulent means to claim that they will have to cancel the debt at a loss. This I will fight to the finish. It is unlawful to circumvent reporting requirements either as a taxpayer or a lender. My tax audit and tax debt is directly connected to the Mortgage Interest issue.

We are entering as potential parties in a nationwide Classaction against Several Banks, including Deutsche Bank. As Wrongful Foreclosure and Bankruptcy Attorney Timothy, who is signing class members to the action:

While the "lender" takes the position that they were defrauded by the borrower, the mortgage broker and the appraiser, the truth is that they intentionally defrauded themselves by setting up the structure and giving themselves the position of "plausible deniability." Their intent was to create a plausible record for the mortgages and notes they were selling to mortgage aggregators and investment bankers.

**5 Unlawfully Posing As "Real Party In Interest"**
**Willful failure to show ownership of the property at the Plaintiffs address**

**In** law, the **real party in interest** is the one who actually possesses the substantive right being asserted and has a legal right to enforce the claim . Additionally, the "**real party in interest**" must sue **in** his own name. **In** many situations, the **real party in interest** will be the parties themselves.

Saxon Mortgage, Deutsche Bank nor NovaStar Mortgag (defunct) is recorded as the "Real Party In Interest" in servicing the Loan of Plaintiffs Wendell & Mary-Kathryn Harper
Saxon mortgage, in violation of Federal Rules of Civil Procedure, has knowingly and willfully represented itself as the "Real Party in Interest" concerning ownership of the parcel of property at 4151 MIFLIN CT ELSOBRANTE, CA 94803
The property was purchased by the Plaintiffs in January, 1989.

Federal Rules of Civil Procedure (17(1):

"An action must be prosecuted in the name of the Real Party in Interest. It cannot be sued nor can it sue as the Real Party in Interest"

 Defendant Saxon Mortgage has declined to clearly establish that it is the true owner of the named property. In fact, three co-defendants named in this suit all claim an interest in the property described in this civil complaint. Each entity fails to establish documented ownership, while each claims a monetary interest.

When required to report to the Internal Revenue Service, Mortgage Interest paid on Three loans by Plaintiff Homeowners Wendell Harper & Mary-Kathryn Harper, First Defendant, Saxon Mortgage, was not authorized to issue the report of Mortgage interest & Points paid to the appropriate owner of the Mortgage Loan Servicing Rights as Lender.

NovaStar Mortgage is not on record as the "Real Party In Interest". NovaStar Mortgage confirmed in writing that it has no authorization or power of attorney to

sign documents or make transactions in servicing of Plaintiffs' loan. When contacted as to Its authorization to report mortgage interest & points paid by the Plaintiffs in acquiring three loans in 2006, NovaStar Mortgage Corporation asserted that it was no longer in operation and had no authority to service the loan of Plaintiffs Wendell & Mary Harper.

Documents connected with the three amended returns filed with the IRS for 2004, 2005 & 2006.

As a result of this preponderance of evidence, I submit that Defendants One, Two & Three have instigated fraud, deception, financial damage to the Plaintiffs through their negligent, compensatory actions.

## 6. Violation of the "Home Ownership and Equity Protection Act

The act requires that lenders not overload or cause a "High-cost refinance loan" Saxon mortgage services has added
 fees, lump sum charges and attorney fees which
Have rendered the current loan amount unclear. The claims range from $475,000 to $540,000. Plaintiffs Wendell & Mary-Kathryn Harper were required to pay nearly $12.000 in lump sum payments to both Saxon & NovaStar Mortgage, with payments averaging more than $2000.00 a month. Saxon Mortgage Services, Deutsche Bank & NovaStar Mortgage have engaged in financial & legal deception.

Neither of the three defendants have clarified the question of ownership. NovaStar Mortgage at once claims to be a Beneficiary of the Loan, while Deutsche Bank claims to act as Trustee in its behalf.

## 7. Unauthorized Debt Collector

Pursuant to the Fair debt Collection Practices Act 15 USC 1692: 808:

"A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt". The term "Debt Collector", means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects, or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

The term does not include: "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity concerns a debt which was not in default at the time it was obtained by such person".

Plaintiff's Mary-Kathryn Harper & Wendell Harper had reached a contract agreement with Loan Holder NovaStar Mortgage before the end of October 2009. This specific document, including the Deed of Trust, was recorded in Contra Costa County before Saxon Mortgage Acquired the servicing rights to the Loan. Therefore, Saxon is not authorized to act as a Debt Collector in this matter, and therefore has sought without authority, to collect a debt.

**Non Compliance with The Federal Housing Association Pre-Foreclosure Requirements**

The Fair Housing Act requires that every lender mail written information called, "how to Avoid Foreclosure" and conduct a face-to-face meeting with the borrower before foreclosing. If the lender or bank has not taken these steps, then it cannot foreclose. Saxon Mortgage has never offered or set a date, time or place for a face-to-face meeting with the Plaintiffs in this case.

Further, Saxon mortgage has not taken steps to acknowledge or address the hardship claims in the Plaintiffs' efforts to work out a Loan Modification Agreement. Any agreement came with a condition of paying a lump sum of money in addition to regular monthly payments imposed by the Lender.

Conditions were imposed upon the homeowners, who are Plaintiffs in this matter, that Saxon Knew or should have known, was not in financial shape to meet. Payments were assigned unilaterally on a "take it or leave it basis". Deadlines were imposed that restricted severely, these homeowners efforts to manage the mortgage payments.

Yet, NovaStar Mortgage has documented that it no longer is a mortgage lender, nor does it claim any further connection with the loan made to Plaintiffs by First United Loans. A representative of NovaStar Mortgage made a Public announcement online, disclaiming ownership of any loans, and saying that it no longer was servicing loans.

Plaintiffs Wendell Harper & Mary-Kathryn Harper received a letter from NovaStar in October, 2007, confirming that it had transferred ownership of Plaintiffs' loan to Saxon Mortgage. At no time did it list Deutsche Bank as having any connection with Saxon Mortgage or NovaStar Mortgage.

In fact, Plaintiffs have in their possession, a return of a certified letter and documents we sent them relative to our Claim for Mortgage Interest & a demand as to Clarifying who was the legal owner of the Loan. The information was needed to Provide certifiable facts that our Loan was indeed made, and the points and Mortgage Interest actually paid by the Plaintiff homeowners.

**Prayer for Relief**

Debtors prayer for relief requests that all three lenders be required to state their true standing in this case, and to show cause why the Automatic Stay should be lifted.

That debtors be allowed ample opportunity to respond.

The True Lender should be required to cooperate with debtors In seeking to acquire The refunds it would be eligible fully to receive, with their certified signatures, and initial, and taxpayer Identification.

That the Movants be sanctioned for filing an untimely Motion and not contacting the appropriate counsel.

That this matter be continued until the dispute between the Internal Revenue Service, Deutsche Bank/Saxon Mortgage and the Debtors be heard in an appeal hearing and resolved. That the lender answer the debtors claim that the IRS requires then to verify all mortgage related documents and report all penalties and interest as required.

We request that Deutsche Bank be sanctioned to the fullest extent of the law for Attempting to subjugate our stay and for its malice toward fraud and deception.

Documents connected with the three amended returns filed with the IRS for 2004, 2005 & 2006.

As a result of this preponderance of evidence, I submit that Defendants One, Two & Three have instigated fraud, deception, financial damage to the Plaintiffs through their negligent, compensatory actions.

Wendell Harper
Mary-Kathryn Harper