April 13, 2011

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| WENDELL HARPER<br>MARY-KATHRYN HARPER | Bankruptcy Case No. 10-48255-RUN |
| "Debtors" | RS No. ND-532 |
| V | Chapter 7 |

DEUTSCHE BANK, SAXON MORTGAGE SERVICES, INC., NOVASTAR
MORTAGE, INC., THE NEW YORK BANK OF MELLON AS "TRUSTEES"
FOR NOVASTAR MORTGAGE, INC.

   "Creditors"

TO THE HONORALE RANDALL J. NEWSOME, UNITED STATES BANKRUPTCY
COURT JUDGE, THE "CREDITORS", COUNSEL, THE "TRUSTEE" , SAXON
MORTAGE SERVICES, INC., THE NEW YORK BANK OF MELLON, NOVASTAR
MORTAGE, INC., DEUTSCHE BANK NATIONAL TRUST COMPANY AND
OTHER INTERESTED PARTIES.

Be it noted that Wendell Harper and Mary-Kathryn Harper are not objecting to any proof established by this court that recognizes what it deems the true owner of the mortgage note held on our property. We do, however, say that this decision will be presented to the Internal Revenue Service on May 04, 2011, as proof as to whom the mortgage note belongs.

This true owner is therefore to be held liable for damages, as the law provides, for willfully denying the homeowners residing at 4151 Miflin Court, El Sobrante, CA 94803,
The opportunity and the right to gain ownership of this property. We have been forcibly contained within a debt for which we should not be held responsible, when all the rightful owner of the mortgage note was obliged to do is to report to the Internal Revenue Service between January 01, 2007 to this date, the aggregate of Mortgage Interest, Points, Prepayment Penalties, Prepayment Riders, Balloon

Payments and Agreements made between the debtors and the "holder" of the mortgage note

We are calling upon the true owner of this note, to stipulate to its fiduciary responsibility to report to the Internal Revenue Service, all financial transactions involved in consummating 4 refinanced loans. The homeowners in this matter filed for Home Acquisition Debt on all four loans, and used most of the funds to completely improve and upgrade the property at this address. These loans were acquired in order to retain our property, to improve and expand its components.

We have considered all elements of getting funds to make these improvements while being able to end the debt obligation. After futilely applying for two major Construction loans, a Veterans Loan Guarantee, and a certificate from the California Veterans Department for financial help in expanding, we faced the reality that because our Loan amount was far above market value, we did not qualify to refinance.

Further, we realized that incurring greater debt in an effort to rid ourselves of the mortgage Obligation, was not going to provide us funds sufficient to pay off the mortgage and to own the property outright. We then were directed to another path, thanks to the Internal Revenue Service, First United Loans, Countrywide Loans, and NovaStar Mortgage, Inc.,: Home Acquisition Debt.

While looking through Countrywide's website, we noticed a page discussing the "Tax Benefits of Refinancing" as told by the lender. The page was linked to the IRS website, and took us directly to Publication 936. In August, 2007, we saw a similar article on the website of NovaStar Mortgage, Inc.. It also cited home acquisition debt and home equity debt as the tax benefits of refinancing.

We contacted the IRS, received all the forms for filing amended returns to claim Home Acquisition Debt. The rest is history. We filed in May, 2007. The money we received from the agency is ruled an underpayment, because we didn't "document" our claim for Mortgage Interest, Points and other acquired debt elements.

Wendell Harper and Mary-Kathryn Harper also were assessed a tax debt because we borrowed on our pensions several times since 2007, trying to keep the mortgage payments current. My pension has been exhausted, and part of the tax debt I have been assessed is the result of early withdrawal and a double-tax is attributable to the lender's negligence.

Still, the truthful owner defied every effort to work with them, as we were never able to learn to whom the mortgage note belongs. We have sent tax forms, along with letters and notices, urging Saxon Mortgage, NovaStar Mortgage, and several other servicers of this loan to step forward and verify our tax claims, or cite the true owner of the original mortgage note; the holder.

**We are renewing our call for the tax documents to be signed, and that the right lender complies with the obligations called for in the tax code. We will be sending those points and authorities in our next mailing.**

**We therefore pray that the court will continue the Automatic stay pending the out come of our written qualified request to Saxon Mortgage and all connected parties. If the court lifts the stay, over our objections, we then would ask that it stipulate that Deutsche Bank is the holder of the true mortgage note.**

**Sincerely,**

**Wendell Harper**
**Mary-Kathryn Harper**

# PETRUCCELLI, MARTIN & HADDOW, LLP

Attorneys at Law

50 Monument Square
Post Office Box 17555
Portland, Maine 04112-8555

GERALD F. PETRUCCELLI
*gpetruccelli@pmhlegal.com*

April 8, 2011

Senator David R. Hastings, III, Esq., Chair
Committee on Judiciary
c/o Legislative Information
100 State House Station
Augusta, ME 04333

Representative Joan M. Nass, Chair
Committee on Judiciary
c/o Legislative Information
100 State House Station
Augusta, ME 04333

RE: HP 128, LD 145 - An Act to Protect Homeowners Subject to Foreclosure by Requiring the Foreclosing Entity to Provide the Court with Original Documents

Dear Senator Hastings and Representative Nass:

    I am writing to express my support for LD 145 and in the hope that it may be helpful to the Committee to focus particularly on the distinctive characteristics of a promissory note, as distinguished from documents generally. Many years ago, I taught commercial law at the University of Maine School of Law School. In the course of that work, I came to know something about promissory notes and I am writing to offer some observations that I think might be helpful in thinking about these problems.

    I do not currently represent any banks. One of my Partners has been involved in one or two of the foreclosure disputes that have generated some of this discussion, but I am not writing on behalf of any client.

    This is not simply a question of evidence law. The question is not whether the copy, or the photograph, or the digital image, should suffice as proof that a loan was made, notwithstanding the best evidence rule. It is not a question of modern technology concerning recordkeeping in the computer age. The note is not a record. The promissory note, unlike other documents, is itself valuable property. A photograph of the promissory

note may be in the possession of still another person, carrying still another endorsement, a fact which cannot be determined by the court without examination of the original.

To return to the beginning, I do not mean to be flippant when I say that if the bank can foreclose by producing a photograph of the note, the foreclosure judgment ought to be able to be satisfied by the homeowner delivering a photograph of the house. In both instances, photographs of the property are not the property. In a negotiable instruments setting, all of the issues relating to the sufficiency of photocopies of records or files, or contracts, or documents are fundamentally irrelevant to the real point. Only the holder of the original note with all proper endorsements in place is entitled to claim and enjoy the benefits of holder in due course status in enforcing the obligations of the maker on the promissory note.

I respect and appreciate all of the hard work that is being done by all of the members of the Legislature on all of these difficult problems. I hope this is of some assistance, and I thank you for the opportunity to comment.

Sincerely,

Gerald F. Petruccelli

GFP/ap

02/26/2009

WENDELL HARPER
KATHRYN HARPER

4151 MIFLIN CT
EL SOBRANTE, CA 94803

RE: Saxon Mortgage Loan No. 2000380690

Dear Customer,

We are pleased to inform you that you have been approved for a Loan Modification. Enclosed are two (2) copies of a Loan Modification Agreement ("Modification Agreement") and one (1) copy of both an Errors and Omissions/Compliance Agreement ("Compliance Agreement") and a Notice of No Oral Agreements ("Notice").

Please review the documents to ensure that the terms are consistent with the terms you discussed with your Saxon Mortgage Services, Inc. ("Saxon") associate. We encourage you to consult with a legal professional before signing either Agreement.

- Your approved modified principal amount includes delinquent payments for the months of 07/01/2008 through 04/01/2009
- Your monthly payment of principal and interest stated in the Modification Agreement does not include escrows. Your **estimated** monthly escrow payment will be $ 518.16 and your **estimated** total monthly payment of principal, interest, and escrows will be $ 1,903.58
- Your new monthly payment amount will be due beginning on the date stated in the Modification Agreement.
- You must send certified funds in the amount $ 2,129.75 as a deposit ("Deposit"). The Deposit includes the following fees and reflects any funds in suspense or any deposit you may have previously made:

    o Payments Posted           $       0.00
    o Interest Due/Uncollected  $       0.00
    o Late Charges Due          $       0.00
    o Late Charges Uncollected  $       0.00
    o Escrow Advance            $       0.00
    o Expense Advance Paid      $       0.00
    o Expense Advance Unpaid    $   2,062.00
    o Admin Fees                $      67.75
    o Optional Insurance Description $  0.00
    o Suspense Funds           ($       0.00 )

Page 1 of 2

Case: 10-48255   Doc# 35   Filed: 04/14/11   Entered: 04/18/11 16:37:33   Page 6 of 17

- You must sign each copy of the Modification Agreement and the Compliance Agreement <u>in the presence of a notary.</u> Please sign your name in ink exactly as it is printed below the signature line. Each acknowledgment must be completed, as necessary, to include the county, state, and date of acknowledgment, as well as the notary's name, title, and commission expiration date. The notary must seal the acknowledgment and sign exactly as the name appears. If witnesses are required, two (2) different individuals must print their names under the witness signature lines and sign exactly as their names appear. DO NOT COMPLETE THE LENDER/BENEFICIARY ACKNOWLEDGMENT.

- Return both duplicate originals of the Modification Agreement and the original Compliance Agreement, each fully executed and notarized, to Saxon, together with the fully executed Notice and Deposit, by Federal Express* to the following address using Federal Express No. 075246692:

  **Loss Mitigation Department**
  **Attn: Bridget Gray**
  **Saxon Mortgage Services, Inc.**
  **4708 Mercantile Drive**
  **Fort Worth, TX 76137**

  The documents should be returned with sufficient time to arrive at Saxon on or before 04/01/2009, at or before 2:00 p.m. central time. You may fax the documents to Saxon before that time at 682-647-4137; however, Saxon must receive the originals and the Deposit within three (3) business days of the day you fax the documents.

- You should retain copies of the Modification Agreement, Compliance Agreement, and Notice for your records. Upon final execution by Saxon, a duplicate, fully executed original of the Modification Agreement will be sent to you. IF YOU FAIL TO RETURN THE DOCUMENTS AND DEPOSIT BY THE TIMES INDICATED, SAXON WILL ASSUME YOU ARE NO LONGER INTERESTED IN A MODIFICATION AND WILL CONSIDER THE MODIFICATION AGREEMENT TO BE VOID AND OF NO FURTHER EFFECT. AT THAT TIME, WE WILL CLOSE OUR FILE.

IT IS IMPORTANT THAT YOU RETURN THE DOCUMENTS AND DEPOSIT AS REQUIRED. If you have any questions regarding your modification or the Agreements, please call us at 888-325-3502

Sincerely,

*[handwritten: 888-325-3502]*

LINDA DAWKINS
Loss Mitigation Analyst

*Note: Many Federal Express shipping locations have a notary on site for your added convenience.*

Recording Requested By:
Saxon Mortgage Services Inc.

Return To:
Saxon Mortgage Services Inc.
4708 Mercantile Drive
Fort Worth, TX 76137

# LOAN MODIFICATION AGREEMENT
(Providing for Extended Initial Interest Rate Period Before Adjustable Interest Rate Period Begins - and a Stated Balloon Amount Feature)

Loan Number: 2000380690

This Loan Modification Agreement ("Agreement"), made this 26th day of February, 2009, between
WENDELL HARPER, KATHRYN HARPER

("Borrower") and
The Bank of New York Mellon, as Successor Trustee under NovaStar Mortgage Funding Trust, Series 2006-3, by Saxon Mortgage Services, Inc., as its attorney-in-fact

("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated June 23, 2006 and recorded in the COUNTY Records of
[Name of Records]
CONTRA COSTA COUNTY
[County and State, or other Jurisdiction]

and (2) the adjustable rate note (the "Note"), bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

4151 MIFLIN CT
EL SOBRANTE, CA 94803

[Property Address]

SAXON MORTGAGE SERVICES INC. MODIFIED
LOAN MODIFICATION AGREEMENT - Single-Family - Fannie Mae Uniform Instrument Form 3161 6/06 - Providing For Extended Initial Interest Rate Period Before Adjustable Interest Rate Period Begins At The First Interest Change Date and a Stated Balloon Amount Feature; & Amended for California to include Notary Acknowledgments and/or other recording information from California

Initials: _____
©2008 Desert Document Services, now a part of Wolters Kluwer Financial Services
(800) 726-6896 www.desertdocs.com
D13900 Rev. 07/08

Page 1 of 5

Case: 10-48255   Doc# 35   Filed: 04/14/11   Entered: 04/18/11 16:37:33   Page 8 of 17

the real property described being set forth as follows:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF, AS EXHIBIT 'A'

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

1. As of February 26, 2009, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $ 475,000.00, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

   The Unpaid Principal Balance does not include the following amount which is also payable under the Note and Security Instrument, $ 26,303.00 (the "Stated Balloon Amount"), because this is the amount that Borrower owes to Lender in arrears. Lender hereby agrees to waive charging further interest on the Stated Balloon Amount to Borrower in exchange for Borrower's promise to pay the Stated Balloon Amount to Lender on October 1, 2036 (the "Maturity Date") in this Agreement.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.500 % until 03/01/2014 (the "first interest Change Date").

   Borrower promises to make monthly payments of principal and interest of U.S. $ 1,385.42, beginning on the 1st day of April, 2009.

   On the first interest Change Date, the interest rate Borrower will pay may change in accordance with the terms of the Note.

   After the first interest Change Date, the amount of Borrower's monthly payments may change in accordance with the terms of the Note.

   Borrower will continue to make monthly payments on the same day of each succeeding month until principal and interest are paid in full, except that, if not sooner paid, the final payment of principal and interest shall be due and payable on the 1st day of October, 2036, which is the present or extended Maturity Date.

SAXON MORTGAGE SERVICES INC. MODIFIED
LOAN MODIFICATION AGREEMENT - Single-Family - Fannie Mae Uniform Instrument Form 3161 6/06 - Providing For Extended Initial Interest Rate Period Before Adjustable Interest Rate Period Begins At The First Interest Change Date and a Stated Balloon Amount Feature; & Amended for California to include Notary Acknowledgments and/or other recording information from California

Initials: _____

©2008 Desert Document Services, now a part of Wolters Kluwer Financial Services
(800) 726-9895 www.desertdocs.com
D13000 Rev. 07/08

Case: 10-48255  Doc# 35  Filed: 04/14/11  Entered: 04/18/11 16:37:33  Page 9 of 17

Borrower also promises to pay the Stated Balloon Amount, without interest, to the order of Lender, if not sooner, on the Maturity Date.

At least 90 days but not more than 120 days before the Maturity Date, Lender must send me a notice which indicates the Maturity Date and the amount of the final payment which is due on that date ("Stated Balloon Amount Payment") assuming all scheduled payments due between the date of the notice and the Maturity Date are paid and received on time.

3. If on the Maturity Date, Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

4. Borrower understands and agrees that

   (a) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (b) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

   (c) Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

   (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

   (e) All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

   (f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

SAXON MORTGAGE SERVICES INC. MODIFIED
LOAN MODIFICATION AGREEMENT - Single-Family - Fannie Mae Uniform Instrument Form 3161 6/06 - Providing For Extended Initial Interest Rate Period Before Adjustable Interest Rate Period Begins At The First Interest Change Date and a Stated Balloon Amount Feature; & Amended for California to Include Notary Acknowledgments and/or other recording information from California

©2008 Desert Document Services, now a part of Wolters Kluwer Financial Services
(800) 725-8893  www.desertdocs.com

Initials: _____

Page 3 of 5

D13000   Rev. 07/08

_Wendell Harper_ (signature)  _____ (Seal)
WENDELL HARPER                                              -Borrower

Mary -
_Kathryn Harper_ (signature)
Mary -KATHRYN HARPER + MKH-  _____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

## BORROWER ACKNOWLEDGMENT

State of California
County of CONTRA COSTA

On March 25th 2009 before me, Mitchell Newman III (Notary Public) personally appeared WENDELL HARPER, ~~KATHRYN HARPER~~ Mary-Kathryn Harper

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument, the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

[Notary Seal: MITCHELL NEWMAN III, COMM. # 1765384, NOTARY PUBLIC-CALIFORNIA, CONTRA COSTA COUNTY, My Comm. Exp. Sept. 30, 2011]

_Mitchell Newman_ (signature) _____ (Seal)
                                              Notary Public

SAXON ~~MORTGAGE SERVICES INC. MODIFIED~~
LOAN MODIFICATION AGREEMENT - Single-Family - Fannie Mae Uniform Instrument Form 3161 6/06 - Providing For Extended Initial Interest Rate Period Before Adjustable Interest Rate Period Begins At The First Interest Change Date and a Stated Balloon Amount Feature; & Amended for California to include Notary Acknowledgments and/or other recording information from California

©2008 Desert Document Services, now a part of Wolters Kluwer Financial Services
(800) 726-9836 www.desertdocs.com
D13000    Rev. 07/08

Page 4 of 5

The Bank of New York Mellon, as Successor Trustee under NovaStar Mortgage Funding Trust, Series 2006-3, by Saxon Mortgage Services, Inc., as its attorney-in-fact _____(Seal)
-Lender

By: /s/ Courtney Ehinger
Courtney Ehinger
SVP, Saxon Mortgage Services Inc.

## LENDER ACKNOWLEDGMENT

**State of Texas**
**County of Tarrant**

On JUL 15 2009 before me, Sabrina Janine Whitworth, personally appeared Courtney Ehinger, SVP, of The Bank of New York Mellon, as Successor Trustee under NovaStar Mortgage Funding Trust, Series 2006-3, by: Saxon Mortgage Services, Inc. as its attorney-in-fact, Lender, who proved to me that the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of Texas that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____ (Seal)
Notary Public

[Notary Seal: SABRINA JANINE WHITWORTH, My Commission Expires April 24, 2010]

SAXON MORTGAGE SERVICES INC. MODIFIED
LOAN MODIFICATION AGREEMENT WITH MERS – Single-Family – Fannie Mae Uniform Instrument Form 3161 6/06 – Providing for Extended Initial Interest Rate Period Before Adjustable Interest Rate Period Begins At The First Interest Change Date, An Extended Interest-Only Period And A Stated Balloon Amount Feature; & Amended for Texas to include Notary Acknowledgments and/or other recording information from Texas

Case: 10-48255    Doc# 35    Filed: 04/14/11    Entered: 04/18/11 16:37:33    Page 12 of 17

LENDER:

Saxon Mortgage Services Inc.

BORROWER(S):

WENDELL HARPER, KATHRYN HARPER

PROPERTY ADDRESS:
4151 MIFLIN CT
EL SOBRANTE, CA 94803

LOAN NO.:
2000380690

## ERROR AND OMISSIONS / COMPLIANCE AGREEMENT

The undersigned borrower(s) for and in consideration of the above-referenced Lender funding the closing of this loan agrees, if requested by Lender or Closing Agent for Lender, to fully cooperate and adjust for clerical errors, any or all loan closing documentation if deemed necessary or desirable in the reasonable discretion of Lender to enable Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Government National Mortgage Association, Federal Housing Authority or the Department of Veterans Affairs, or any Municipal Bonding Authority.

The undersigned borrower(s) agree(s) to comply with all above noted requests by the above-referenced Lender within 30 days from date of mailing of said requests. Borrower(s) agree(s) to assume all costs including, by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to comply with correction requests in the above noted time period.

The undersigned borrower(s) do hereby so agree and covenant in order to assure that this loan documentation executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interest in and to said loan documentation, and to assure marketable title in the said borrower(s).

Case: 10-48255   Doc# 35   Filed: 04/14/11   Entered: 04/18/11 16:37:33   Page 13 of 17

DATED effective this _____ day of _____

**Wendell Harper** (signature)
WENDELL HARPER                                                                 (Borrower)

**Mary-Kathryn Harper** (signature)
MARY KATHRYN HARPER                                                             (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

_____ (Borrower)

State of California
County of Contra Costa

Subscribed and sworn to (or affirmed) before me on this 25th day of MARCH 2009, by MARY KATHRYN HARPER / WENDELL HARPER

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Seal

MITCHELL NEWMAN III
COMM. # 1765364
NOTARY PUBLIC - CALIFORNIA
CONTRA COSTA COUNTY
MY COMM. EXP. SEPT. 30, 2011

Signature _Mitchell Newman_

VMP ® -14J(CA) (0711)

Page 2 of 2

11/07

August 08, 2007

WENDELL HARPER
MARY-KATHRYN HARPER
4151 MIFLIN CT.
ELSOBRANTE, CA.
94803

NOVASTAR MORTGAGE, INC.

Dear NOVASTAR:

I am employing a weekly practice of communicating with NovaStar as to
Where things stand and what steps are to be taken when. I am not awaiting
For the other shoe to drop, however, just simply doing what I know works best
For my wife and I.

We are bringing all of our bills current: Vehicle Registration, Utilities, Income Tax
Delinquencies, DSL online service and our personal telephone. At the moment, we
Have paid the registration, Brought current our AT&T obligations and we are already
On a payment plan with the INTERNAL REVENUE SERVICE & THE F RANCHISE
TAX BOARD. We have arranged to pay the utility bill in a way that will free up money
To use towards eliminating the mortgage deficit.

We figure that by September 1st, we will have received word from the Intternal Revenue
Service about our refund. We also have determined that the latest date we would receive
Our refund is December 1st. We expect the refund to come anytime during the month of
September. In addition, we have sent all the documents necessary to be eligibile for
Social Security Benefits. That occurs next June. Once the payments begin, however, they
Would be applied directly to the Mortgage. We will use our salaries to pay the regular
monthly payments. My salary should return to normal September 15th. That means I may
apply most of the money towards the mortgage deficiency.

Finally, one feature of my job is that I may be able to acquire another salary advance, which would afford me the opportunity to amass two payments at once to combine with Money we will have already collected to apply towards fixing the mortgage.

After extensive research, we have learned that our refund amount is very likely as much as we have claimed; and it is a huge amount. That is why it takes three to four months for The processing of the claim. We will likely receive refunds in four phases: for years 2002, 2005, 2004, and 2002, both from the federal and state agencies.

So again, let's review:

1. A major refund that is nearing the finishing stages of processing.
2. Social Security benefits of $2000,00 a month indefinitely.
3. Access to the money in my 403(b), which will be over 5,000 dollars by the Time it is needed
4  My salary, at only 70 percent of normal, will return to full strength.

.So again, we are not sitting on our hands. Resources are available on the back end of our dilemma. This means that more deductions next year and beyond, coupled with my pensions, salary and refund, will give us the leverage needed to wipe out this deficit and eliminate the tax debt, which is why the processing takes much longer. But if you work with us, you'll have grateful borrowers. Either way, we will prevail in our campaign to update, upgrade, and expand. We will keep in constant touch.

Sincerely,

WENDELL HARPER
MARY-KATHRYN HARPERR

April 13, 2011

LIST OF DOCUMENTS IN SUPPORT OF OBJECTION

1. Response to Deutsche Bank
2. Letter: PETRUCELLI, MARTIN & HADDOW, LLP RE:
   HP 128, LD 145 – An Act to Protect Homeowners Subject to Foreclosure by Requiring the Foreclosing Entity to Provide the Court with Original Documents
3. Copy of second "Loan Modification Agreement", this one by Saxon Mortgage.